## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

RITA A. PETTY and
EDWARD C. PETTY,

        Plaintiffs,

v.              CIVIL ACTION NO.   3:12-6677

COUNTRYWIDE HOME LOANS, INC.,
BANK OF AMERICA, NA, and
THE BANK OF NEW YORK MELLON,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is a joint Motion to Dismiss by Defendants Countrywide Home Loans, Inc., Bank of America, NA, and The Bank of New York Mellon. ECF No. 7.   For the following reasons, the Court **DENIES**, **in part,** and **GRANTS, in part**, Defendants' motion.

### I.
### FACTS

On August 30, 2012, Plaintiffs Rita A. and Edward C. Petty filed a Complaint in the Circuit Court of Cabell County, West Virginia against Defendants.   In the Complaint, Plaintiffs assert that, in the Spring of 2005, Defendant Countrywide Home Loans, Inc. (Countrywide) pressured them into refinancing their house.   Prior to the closing on the loan, Plaintiffs state that Countrywide called them and said that the value of the house was $112,000.   They closed on the loan on June 23, 2005, but Plaintiffs assert that the closing agent never provided them with a meaningful explanation of the terms of the loan.   Plaintiffs claim that it was not until June 2012

when they learned that the market value of the house at the time of closing was actually only $74,100.

After the loan was closed, Countrywide sold the loan under a pooling and servicing agreement (PSA) to Defendant Bank of New York Mellon (Mellon) around September of 2005. Pursuant to the PSA, Defendant Bank of America, NA's (BOA) predecessor in interest was designated as the servicing agent for the holder of the loan.   Plaintiffs allege that the transfer of ownership and servicing rights were contemplated during the origination of the loan and "each party to the PSA received financial remuneration resulting from the origination, servicing, or holding of the loan, pursuant to the agreement." *Compl*. at ¶16.

In or around August 2010, Plaintiffs found it difficult to make their loan payments. When they fell approximately two months behind on their payments, Defendant BOA called them and said they qualified for a loan modification.   Plaintiffs assert Defendant BOA instructed them not to make any payments pending the modification and, if they did, those payments would be returned.   Plaintiffs state they would have caught up the payments to bring their loan current, but for Defendant BOA's representations to them.

Plaintiffs claim that they submitted documentation to Defendant BOA at its request, and Defendant BOA assured them it would not foreclose on the house.   Around June of 2011, however, Defendant BOA wrote Plaintiffs and informed them they were denied a modification because of lacking documentation.   The letter further provided Defendant BOA

would consider other modifications.   Nevertheless, in October 2011, Defendant BOA told Plaintiffs it was going to foreclose unless Plaintiffs made a lump sum payment of over $10,000. Plaintiffs could not reinstate and filed for bankruptcy.   Although the original principal of the loan was $105,300, Defendant BOA claimed that the outstanding principal balance on the loan was approximately $108,486.   Plaintiffs requested, by certified mail, a full account record, but assert that it was not provided.

As a result of these activities, Plaintiffs filed this action against all Defendants as to the loan origination for Unconscionable Inducement (Count I), Fraud (Count II), and Joint Venture and Agency (Count III).   They also assert claims with regard to the servicing of the loan against the Holder (Mellon) and Servicer (BOA) for Fraud (Count IV), Negligence (Count V), Estoppel (Count VI), Illegal Debt Collection (Count VII), Failure to Provide Statement of Account (Count VIII), Breach of Contract (Count IX), and Illegal Debt Collection (Count X).   Defendants removed the case to this Court based upon diversity of jurisdiction and then moved to dismiss.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563.   In its place, courts must now look for "plausibility" in the complaint.   This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted).   Accepting the factual allegations in the

complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted).  If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail.  In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted).   However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).   The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).  Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.  If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)).   The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

### III.
### DISCUSSION

### A.
### Statute of Limitations
### Unconscionable Inducement

Defendants' first argument is that Plaintiffs' claim for Unconscionable Inducement in Count I is barred by a one-year statute of limitations found in the West Virginia Consumer Credit and Protection Act (WVCCPA), West Virginia Code § 46A-5-101(1).   "Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Burgess v. Infinity Fin. Emp't Servs., LLC*, Civ. Act. No. 2:11-cv-00946, 2012 WL 399178, *6 (S.D. W. Va. Feb. 7, 2012) (citations omitted).   Thus, testing the sufficiency of a complaint by a motion to dismiss generally will not reach the merits of an affirmative defense based upon the statute of limitations unless "'facts sufficient to rule on an affirmative defense are alleged in the complaint[.]'" *Id.* (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir.2007)).

In its Memorandum, Defendants speculate that Plaintiffs should have discovered the true value of the property when they presumably received their first tax assessment from the County in January or February of 2006, which was six years before they filed this action. Therefore, Defendants argue Plaintiffs filed this action outside the statute of limitations.  The Court finds, however, Defendants' argument is based upon pure conjecture that Plaintiffs may have received a tax assessment alerting them to a lower house value.  At this point, there is no evidence that the purported tax assessment was sent, received, or what value the house was given on the assessment and whether that assessment was accurate.  Moreover, this conjecture is directly contrary to Plaintiffs' allegation in the Complaint that they did not know the lower market value of the house until 2012.   As the Court must assume the factual allegations in the Complaint as true on a motion to dismiss, the Court **DENIES** Defendants' argument the claim is barred by the statute of limitations.[1]

**B.**
**Sufficiency of**
**Unconscionable Inducement Claim**

Defendants next argue that, even if Plaintiffs' claim for unconscionable inducement was filed within the statute of limitations, Plaintiffs have failed to allege sufficient

---

[1]The parties also argue about when the one-year statute of limitations found in West Virginia Code § 46A-5-101 begins to run.  Plaintiff asserts that the statute clearly provides that their action is timely because it was not "brought more than one year after the due date of the last scheduled payment of the agreement." W. Va. Code § 46A-5-101(1), in part.  Defendants disagree and argue the statute of limitations runs one year after discovery.   Even if this Court were to assume for the sake of argument (without deciding) that Defendants are correct, Plaintiffs allege that they did not know the property's true value until June of 2012.   As this action was filed in August of 2012, Plaintiffs' allegation would make their claim filed well within the one-year statute of limitations suggested by Defendants.

facts to survive a motion to dismiss.  Pursuant to West Virginia Code § 46A-2-121(1) of the

WVCCPA, a court may limit or refuse to enforce an unconscionable consumer loan agreement.

This section provides:

> (1) With respect to a transaction which is or gives rise to a . . . consumer loan, if the court as a matter of law finds:

> (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or

> (b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.

W. Va. Code § 46A-2-121(1).


It is well established in West Virginia that "[a] determination of unconscionability

must focus on the relative positions of the parties, the adequacy of the bargaining position, the

meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the

contract.'" Syl. Pt. 4, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Tel. Co. of W. Va., Inc.*,

413 S.E.2d 670 (W. Va. 1991).   A party claiming a contract is unconscionable must

demonstrate—"'at least in some small measure'"—both procedural and substantive

unconscionability. *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W. Va. 2012)

(citations omitted); *Robinson v. Quicken Loans Inc.*, Civ. Act. No. 3:12-0981, 2012 WL 3670391,

at *1 (S.D. W. Va. Aug. 24, 2012) (stating "an unconscionable contract claim must demonstrate

two types of unconscionability: procedural and substantive" (citation omitted)).   "Procedural unconscionability arises from inequities, improprieties, or unfairness in the bargaining process and the formation of the contract, inadequacies that suggest a lack of a real and voluntary meeting of the minds of the parties." *Dan Ryan Builders,* 737 S.E.2d at 558 (citation omitted).   On the other hand, "[s]ubstantive unconscionability involves unfairness in the terms of the contract itself, and arises when a contract term is so one-sided that it has an overly harsh effect on the disadvantaged party." *Id.* (citation omitted).   In addition, it is clear that "[u]nconscionability claims should but rarely be determined based on the pleadings alone with no opportunity for the parties to present relevant evidence of the circumstances surrounding the consummation of the contractual relationship." *Mallory v. Mortg. Am., Inc.,* 67 F. Supp.2d 601, 612 (S.D. W. Va. 1999) (citation omitted); W. Va. Code § 46A-2-121(2) (providing "[i]f it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination").   It is against this backdrop that the Court considers the pleadings in the present case.

In this case, Plaintiffs allege that they "are unsophisticated in financial matters" and that Defendants are "large national lenders, [who] have engaged in a pattern of deceptively inducing consumers into exploitive loans and predatory loans." *Compl.* at ¶¶2 & 31.   Plaintiffs claim that Defendant Countrywide contacted them about refinancing their home in 2005 and pressured them into a loan based upon misrepresentations that the market value of their house was $112,000, when in actuality the market value at the time was only $74,100. *Id.* at ¶¶ 7-9, & 33.   In

-8-

addition, Plaintiffs assert that the closing agent came to their house and instructed them "to sign some papers, but provided them with no meaningful explanation of the loan terms." *Id.* at ¶ 11. As a result, Plaintiffs were trapped into a loan that far exceeds their property's value, which made refinancing or sale impossible. *Id.* at ¶34.

Assuming the truth of these allegations for purposes of a motion to dismiss, the Court finds that Plaintiffs have stated a plausible claim of procedural unconscionability.  Here, Plaintiffs have alleged they are unsophisticated consumers and Defendants are large national companies.   These allegations raise issues about inequities between the parties in the bargaining process. *See Koontz v. Wells Fargo, N.A.*, Civ. Act. No. 2:10-cv-00864, 2011 WL 1297519, *5 (S.D. W. Va. Mar. 31, 2011) (stating that the plaintiff's assertion she was "unsophisticated in financial matters," and the defendant lender was "a large, national lending institution[,] . . . taken in the light most favorable to Plaintiff, raise a question as to the parties' relative bargaining positions"); *citing Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 861 (W. Va. 1998) (providing "national corporate lender and unsophisticated, uneducated consumers is a 'great disparity in bargaining power'").[2]   In addition, Plaintiffs' allegations that the closing agent failed to provide them a meaningful explanation of the terms of the loan and that the agent was not "capable of providing sufficient information, advise, and expertise" about the loan, further supports a plausible claim of unfairness in the loan origination process. *Compl.* at ¶33; s*ee, e.g, Koontz*, 2011 WL 1297519, at *5 (finding "allegations that the closing was 'rushed and hurried' so that Plaintiff went 'without sufficient explanation of the loan documents and the loan terms' ring

---

[2]*Arnold* was overruled on other grounds. *See* Syl. Pt. 2, *Dan Ryan Builders*.

of compulsion, another indicator of unconscionable conduct" (citation omitted)).   Moreover, Plaintiffs' assertion that Defendant Countrywide solicited them to refinance their house and Defendants "have engaged in a pattern of deceptively inducing consumers into exploitive loans and predatory loans" raises further suspicion about the loan process. *Compl.* at ¶31; *Carroll v. JPMorgan Chase Bank, N.A.*, Civ. Act. No. 3:12-5985, 2013 WL 173728, *4 (S.D. W. Va. Jan. 16, 2013) (holding the plaintiff's allegation that the lender "solicited her and her husband to become victims of a pattern of predatory lending creates further suspicion concerning the loan process"). Thus, for all these reasons, the Court finds sufficient allegations of procedural unconscionability.

Turning to substantive unconscionability, Plaintiffs allege that Defendant Countrywide significantly inflated the value of their house over its actual market value to induce them into agreeing to a larger loan.   Plaintiffs assert they relied upon this misrepresentation in entering into the loan.   As a result, they claim it is now impossible for them to refinance or sell their house.   Taken as true, these allegations certainly raise issues of commercial unreasonableness and contractual unfairness and whether it is overly harsh to Plaintiffs, as the alleged disadvantaged party.   Therefore, the Court finds Plaintiffs have sufficiently alleged a claim of substantive unconscionability. *See Carroll*, 2013 WL 173728, *5 (finding the plaintiff sufficiently pled substantive unconscionability where appraisal was alleged to have been intentionally inflated and false and loan amount was based on these misrepresenations).[3]

---

[3]Defendants cite as support *Corder v. Countrywide*, Civ. Act. No. 2:10-0738, 2011 WL 289343 (S.D. W. Va. Jan. 26, 2011), which dismissed an unconscionable contract claim.   The Court in *Carroll* found that the facts before it were distinguishable from *Corder* because the plaintiff in *Corder* did not allege the amount of the overvaluation of the house at the time of the contract. 2013 WL 173728, at *5.   For similar reasons that existed in *Carroll,* and for the reasons

Accordingly, as the Court finds Plaintiffs have sufficiently alleged both procedural and substantive unconscionable inducement, the Court **DENIES** Defendants' motion to dismiss Count I.

## C.
## Fraud Claims

Plaintiffs assert in Count II that Defendant Countrywide fraudulently represented the value of their house when the loan was originated, and they assert in Count IV that Defendant BOA made knowing, reckless, and/or intentional misrepresentations to them with respect to modifying the loan.   Defendants first argue that the fraud claim in Count II is untimely because it is subject to a two-year statute of limitations. W. Va. Code § 55-2-12.   However, it is clear under West Virginia law that the statute of limitations on a fraud claim "does not begin to run until the injured person knows, or by the exercise of reasonable diligence should know, of the nature of his injury, and determining that point in time is a question of fact to be answered by the jury." Syl. Pt. 3, *Stemple v. Dobson*, 400 S.E.2d 561 (W. Va. 1990).   As discussed with respect to Plaintiffs' unconscionable inducement claim, a statute of limitations argument is an affirmative defense and it generally does not lend itself to be resolved on motion to dismiss unless "'facts sufficient to rule on an affirmative defense are alleged in the complaint[.]'"*Burgess,* 2012 WL 399178, *6 (citation omitted).

As previously discussed, a factual dispute exists in this case as to when Plaintiffs first knew, or reasonably should have known, about the alleged fraud.   Plaintiffs claim they first

stated above, the Court is not persuaded that the unconscionability claim in this case must be dismissed.

learned in June of 2012 that the market value of their house was misrepresented to them.   This lawsuit was filed approximately two months later, in August of 2012.   Assuming the truth of Plaintiffs' allegations under the discovery rule, this action clearly falls within the statute of limitations.   Therefore, at this point in the proceedings, the Court **DENIES** Defendants' attempt to dismiss Plaintiffs' fraud claim in Count II based upon the statute of limitations.

Next, Defendants argue that Plaintiffs have failed to allege fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.   Rule 9(b) provides, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).   At a minimum, a plaintiff is required to "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v.Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted)).   In other words, a plaintiff must describe the "'who, what, when, where, and how' of the alleged fraud." *Id*. (quoting *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (other citations omitted)).

In this case, Plaintiffs assert that Countrywide contacted them about refinancing in the Spring of 2005 and told them over the phone, prior to the closing on June 23, 2005, that the value of their house was $112,000.   They further assert that they began struggling with making

their loan payments around August of 2010, and when they were approximately two months behind, Defendant BOA called them and stated they qualified for a loan modification.   During this same conversation, Plaintiffs allege that Defendant BOA told them not to make any further payments pending the modification and, if they did make payments, those payments would be returned.   Over the next several months, Plaintiffs assert they submitted the documentation requested by Defendant BOA, and Defendant BOA assured them it would not foreclose.   Then, around June of 2011, Defendant BOA sent Plaintiffs a letter stating they were denied a modification because of a lack of documentation.   Nevertheless, Defendant BOA represented in the letter that it would consider them for other modifications.   Around October of 2011, however, Defendant BOA informed Plaintiffs it was foreclosing unless Plaintiffs made a lump sum payment.   Although Plaintiffs assert they could have reinstated earlier, they could not make such a large lump sum payment at that point (which now exceeded $10,000) and, as a result, filed for bankruptcy.

Upon consideration of these claims, the Court must remember that it should be hesitant "to dismiss a complaint under Rule 9(b) if the Court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).   Given the allegations made here, the Court finds Plaintiffs adequately alert Defendants as to "the time, place, and contents of the false representations[.]" *U.S. ex rel. Wilson*, 525 F.3d at 379 (internal quotation marks and citation omitted).   With respect to the loan origination, Plaintiffs clearly allege that the

-13-

misrepresentation was the value of the house, which was related to them over the phone by Defendant Countrywide prior to the closing of the loan.   With respect to the servicing of the loan, Plaintiffs claim they were instructed by Defendant BOA over the phone in or around late 2010 they qualified for a modification, they should not make payments, and any payments made would be returned.   Over the next several months, Defendant BOA assured them it would not foreclose, but then denied modifications and demanded a lump sum payment or face foreclosure.   Given this information, Defendants should be able to adequately prepare to defend against the allegations. *See Ranson v. Bank of Am.*, *N.A.*, Civ. Act. No. 3:12-5616, 2013 WL 1077093, *7 (S.D. W. Va. Mar. 14, 2013) (finding in light of substantially similar allegations of fraud against Defendant BOA that "[t]he allegations provide enough information that Defendant also should be able to identify and review its customer services notes, call logs, account records, and any phone recordings it may have during the specified time period").   Thus, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' fraud claims.[4]

### D.
### Joint Venture

Defendants next move to dismiss Plaintiffs' claim for Joint Venture and Agency in Count III.   Defendants move to dismiss this claim because they argue Plaintiffs merely recite the elements of joint venture and provide no factual support for their claim.   Under West Virginia law, joint venture "'is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and

---

[4]Defendants also claim they were under no duty to perform an appraisal in a certain way or disclose its results to Plaintiffs.   Even assuming the truth of these statements, Plaintiffs' allegation is that Defendant Countrywide provided them false information to induce them into getting a bigger loan.

knowledge.'" *Armor v. Lantz*, 535 S.E.2d 737, 742 (W. Va. 2000) (quoting Syl. Pt. 2, *Price v. Halstead*, 355 S.E.2d 380 (W. Va. 1987)). "[A] joint venture arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." *Price*, 355 S.E.2d at 384 (citation omitted). "[M]embers of a joint venture are . . . jointly and severally liable for all obligations pertaining to the joint venture, and the actions of the joint venture bind the individual co-venturers." *Armor*, 535 S.E.2d. at 743. "In addition, each venturer is liable for the unlawful acts of a co-venturer when the act is committed within the scope of the venture and with the implied consent of the venturer." *Short v. Wells Fargo Bank Minn., N.A.*, 401 F. Supp.2d 549, 563 (citing 46 Am.Jur.2d Joint Ventures § 42). Ordinarily, questions over whether a joint venture exists should be resolved by the trier of fact. *Armor*, 535 S.E.2d at 743 (citation omitted).

Although the West Virginia Supreme Court of Appeals has "never formulated any broad analytical test by which to determine the existence of a joint venture," it has identified the "existence of certain 'distinguishing elements or features' essential to the creation of a joint venture." *Id.* In *Armor*, it explained:

> 'As between the parties, a contract, written or verbal, is essential to create the relation of joint adventurers . . . . To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise . . . . An agreement, express or implied, for the sharing of profits is generally considered essential to the creation of a joint adventure, and it has been held that, at common law, in order to constitute a joint adventure, there must be

-15-

> an agreement to share in both the profits and the losses.  It has also been held, however, that the sharing of losses is not essential, or at least that there need not be a specific agreement to share the losses, and that, if the nature of the undertaking is such that no losses, other than those of time and labor in carrying out the enterprise, are likely to occur, an agreement to divide the profits may suffice to make it a joint adventure, even in the absence of a provision to share the losses.'

535 S.E.2d at 743 (quoting *Pownall v. Cearfoss*, 40 S.E.2d 886, 893–94 (W. Va. 1946) (citations and footnote omitted)).

In their Complaint, Plaintiffs assert that each Defendant had an agreement "for a single business enterprise, that is the closing of the financing of the home at issue in this case." *Compl*. at ¶ 45.  Plaintiffs also allege each Defendant "shared in the profits and/or losses of the single business enterprise[,]" "combined their money, skill, and/or knowledge to carry out this single business enterprise[,]" and committed acts "in furtherance of a joint venture[.]" *Id*. at ¶¶ 46-48.  In addition, Plaintiffs claim "[t]he Defendant lender and holder exercised a degree of control over the remaining Defendants in carrying out the single business enterprise." *Id*. at ¶ 49. In the Statement of Facts, Plaintiffs further explain that the transfer of ownership and servicing rights pursuant to the PSA "was contemplated during the origination process" and "each party to the PSA received financial remuneration resulting from the origination, servicing, or holding of the loan, pursuant to the agreement." *Id*. at ¶¶13-16.  In addition, Plaintiffs claim that "[a]t all times after the loan transfer, Defendant Bank of New York Mellon exercised some degree of control over Defendant BOA, which acted as the holder's servicing agent." *Id*. at ¶18.

In *Short*, this Court was able to review a PSA on summary judgment and found it created genuine issues of material fact as to whether a joint venture and an agency relationship existed. 401 F. Supp.2d at 565.   Here, Plaintiffs have alleged a PSA exists and they describe what they believe the relationship amongst Defendants is.   However, the Court does not have the agreement before it because discovery did not begin until after the current motion was ripe.   In reviewing the allegations made in this case, the Court recognizes that they are set forth in somewhat general terms, but detailed facts are not required under Rule 8.   Moreover, as this Court noted in *Goodwin v. First Franklin Financial Corp.*, 3:10-cv-00077 (S.D. W. Va. Sept. 29, 2010), "as a practical matter, Plaintiff[s] will not have access to much of the information regarding corporate interrelationships of Defendants before discovery occurs." Slip op. at 11.   Given the allegations that Plaintiffs have made, the Court finds they are sufficient to state a plausible claim and, therefore, **DENIES** Defendants' motion to dismiss Count III.

## E.
## Breach of Contract

Defendants also argue that Plaintiffs have inadequately stated a claim for breach of contract in Count IX.   To avoid dismissal of a breach of contract claim under Rule 12(b)(6), West Virginia law requires: "the existence of a valid, enforceable contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Executive Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp.2d 694, 714 (S.D. W. Va. 2009) (citations omitted). For a claim of breach of contract to be sufficient, "a plaintiff must allege in his complaint 'the breach on which the plaintiffs found their action . . . [and] the facts and circumstances which entitle them to damages.'" *Id.*

-17-

Defendants first argue there is no "valid, enforceable contract" between Plaintiffs and Defendant BOA for servicing the loan.   In support of their breach of contract claim, Plaintiffs rely upon provisions in the Deed of Trust.   However, Defendant BOA is not a party to the Deed of Trust and is not the current holder of the loan.   In addition, Plaintiffs have not identified any contract between themselves and Defendant BOA but, instead, allege that Defendant BOA is merely a successor by merger to the original servicer of the loan. *Compl.* at ¶4.   Therefore, the Court finds that Plaintiffs have failed to allege a plausible breach of contract by Defendant BOA, and the claim against it is dismissed. *See Cannon v. Wells Fargo Bank, N.A.*, No. C-12-1376 EMC, 2013 WL 132450, *22 (N.D. Cal. Jan. 9, 2013) (concluding that the plaintiffs could not maintain a breach of contract claim against the servicer of a loan for Fannie Mae because the servicer was not a party to the mortgage agreement); *Campbell v. California Reconveyance Co.*, No. CV-11-00180-PHX-DGC, 2012 WL 5299099, *4 (D. Ariz. Oct. 25, 2012) (finding that, where the plaintiffs failed to identify a contract with the loan servicer, the plaintiffs could not prevail on a breach of the covenant of good faith and fair dealing claim); *Markle v. HSBC Mort. Corp.*, 844 F. Supp.2d 172, 183 (D. Mass. July 12, 2011) (granting motion to dismiss because the plaintiffs lacked standing to enforce Mortgage Selling and Servicing Contract between Fannie Mae and their mortgage servicer); *Johnson v. Affiliated Computer Servs., Inc.*, Civ. Act. No. 3:10-CV-2333-B, 2011 WL 4011429, *7 (N.D. Tex. Sept. 9, 2011) (dismissing breach of contract claim against loan servicer where the plaintiff was not a party to the servicing agreement and did not allege the contract was entered into to directly benefit him); and *Kehoe v. Aurora Loan Servs. LLC*, No. 3:10-cv-00256-RCJ-RAM, 2010 WL 4286331, *8 (D. Nev. Oct. 20, 2010) (noting a loan servicer

-18-

is not a party to a deed of trust and servicing a loan does not create contractual privity with borrowers).

Defendants also argue that the breach of contract claim against Countrywide and Mellon[5] fails because West Virginia law "does not require creditors in a deed of trust, or their representatives, to pursue remedies that are not set out in the deed of trust or any relevant statute to attempt to cure a default prior to pursing a foreclosure under W. Va. Code § 38-1-3." Syl. Pt. 4, in part, *Lucas v. Fairbanks Capital Corp.*, 618 S.E.2d 488 (W. Va. 2005). Therefore, Defendants argue they were within their right to seek foreclosure and did not violate any contractual obligations. However, Plaintiffs have alleged Defendants breached the expressed terms of the Deed of Trust by interfering with their right to reinstate the loan and by refusing to accept payments. In addition, Plaintiffs claim that Defendants failed to comply with their contractual duty of good faith and fair dealing by instructing them not to make payments, promising loan modification, and then seeking foreclosure. Therefore, as Plaintiffs have alleged a breach of the Deed of Trust, the Court finds they have sufficiently alleged a breach of contract claim against Mellon and **DENIES** the motion to dismiss Count IX against Mellon. However, as Plaintiffs have failed to allege a plausible claim against BOA, the Court **GRANTS** the motion to dismiss Count IX against BOA.

---

[5]Although Defendants assert the contract claim is against Countrywide and Mellon, the contract claim is in "Part B" of the Complaint which Plaintiffs have designated as "Servicing (Holder and Servicer)." As Plaintiffs designate Countrywide as the "Lender," it appears that Counts IV through X (which includes the contract claim) are not claims being made against Countrywide.

**F.**
**Negligence**

Defendants further argue that Plaintiffs' claim for Negligence in Count V must be dismissed.  This Court recently discussed this precise issue in *Ranson v. Bank of Am.*, *N.A.*, Civ. Act. No. 3:12-5616, 2013 WL 1077093 (S.D. W. Va. Mar. 14, 2013).  In *Ranson*, the Court explained that, under West Virginia law, a consumer can pursue "separate" claims for violations of the WVCCPA and common law. 2013 WL 1077093, at *5 (citing *Bailey v. Branch Banking & Trust Co.*, Civ. Act. No. 3:10-0969, 2011 WL 2517253 (S.D. W. Va. June 23, 2011)).  However, "a plaintiff 'cannot maintain an action in tort for an alleged breach of a contractual duty.'" *Id.* (quoting *Lockhart v. Airco Heating & Cooling*, 567 S.E.2d 619, 624 (W. Va. 2002) (footnote omitted)).  Rather, the Court stated that "[t]ort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law *because of the relationship of the parties*, rather than a mere omission to perform a contract obligation." *Id.* (internal quotation marks and citation omitted; emphasis added in *Ranson*).  In deciding whether a "special relationship" exists beyond the contractual obligations of the parties largely depends upon "'the extent to which the particular plaintiff is affected differently from society in general.'" *Id.* (quoting *Aikens v. Debow*, 541 S.E.2d 579, 589 (W. Va. 2000)).  In the context of a lender-borrower case, "'courts consider whether the lender has created such a "special relationship" by performing services not normally provided by lender to a borrower.'" *Id.* (quoting *Warden v. PHH Mortgage Corp.*, No. 3:10-cv-00075, 2010 WL 3720128, at *9 (N.D. W. Va. Sept. 16, 2010) (other citation omitted)).

In this case, Plaintiffs allege that "Defendants engaged in significant communications and activities with Plaintiffs and the loan, [and] Defendant owed a duty to

Plaintiffs to provide them with accurate information about the status of their loan account." *Compl.* at ¶58.   Plaintiffs also allege "Defendants breached that duty by instructing . . .  [them] not to make payments, telling Plaintiffs that it would return their payments . . . , advising   . . . [them] they would receive a modification, and then instead allowing arrears to accrue for months and ultimately denying Plaintiffs assistance and pursuing foreclosure." *Id*. at ¶59.   As a result of these actions, Plaintiffs claim they were damaged by making it impossible for them to reinstate the loan. *Id*. at ¶60.

As stated above, Plaintiffs and Defendant Countrywide allegedly entered into a Deed of Trust and Defendant Mellon is the current holder of the loan, thereby, creating a contractual relationship.   However, Defendant BOA denies it has a contractual relationship with Plaintiffs, and this Court agreed that Plaintiffs have failed to sufficiently allege a contract exists in the Complaint.   Thus, the Court must consider these Defendants separately.

In light of nearly identical allegations in *Ranson* where the defendant was the alleged holder and servicer of the loan,[6] the Court found the plaintiff "failed to allege any positive legal duty beyond [the] [d]efendant's purported contractual obligations." *Ranson*, 2013 WL

---

[6]In *Ranson*, the plaintiff alleged "that, where [the] '[d]efendant engaged in significant communications and activities with [the] [p]laintiff[] and the loan, [the] [d]efendant owed a duty to [the] [p]laintiff to provide him with accurate information about his loan account and its obligations and rights thereunder.'" *Id.* at *6 (quoting *Ranson's Compl.* at ¶27).   The plaintiff also asserted "[the] '[d]efendant[] breached that duty by instructing [the] [p]laintiff not to make payments, advising [the] [p]laintiff that he would receive a loan modification, and then instead allowing arrears to accrue for months and ultimately denying [the] [p]laintiff[] assistance and pursuing foreclosure." *Id*. (quoting *Ranson Compl.*   at ¶28).

1077093, at *6.   There simply was "nothing about these allegations that creates a 'special relationship' between the parties[,] . . . [as] a duty to provide accurate loan information is a normal service in a lender-borrower relationship." *Id*.   Applying this reasoning to the present case, the Court reaches the same result as to Defendant Mellon, as the alleged current holder of the loan. Plaintiffs simply have failed to sufficiently allege a special relationship beyond the parties' contractual obligations.   Thus, the Court **GRANTS** the motion to dismiss with respect to claims against Defendant Mellon in Count V.

As the Court found above, however, Plaintiffs have not identified any contract between themselves and Defendant BOA, and BOA denies that one exists.   Thus, the reasoning in *Ranson* does not apply to Defendant BOA.   Nevertheless, Defendants argue that Plaintiffs have failed to state a claim of negligence as a matter of law because they have not alleged Defendants owed them a duty, breached the duty, and the breach resulted in damages. *See Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004) (stating "[t]o prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately caused the injuries of the plaintiff" (citation omitted)).   Upon review of the facts alleged and recited above, the Court disagrees and finds Plaintiffs have stated a plausible claim of negligence against Defendant BOA. Therefore, the Court **DENIES** Defendants' motion to dismiss the negligence claim in Count V against BOA.

## G.
## Estoppel Claim

Again, similar to *Ranson*, Defendants argue that Plaintiffs' estoppel claim in Count VI must be dismissed because they had actual knowledge by virtue of communications made in 2010 and 2011 that any loan assistance would not impact the right to foreclose and there was no guarantee they would be granted a modification.   In addition, Defendants argue that Plaintiffs stopped making payments as a result of their own financial situation so it had nothing to do with any representations made by Defendants.

As in *Ranson*, the Court rejects these arguments.   Defendants' arguments are based upon factual disputes.   Defendants rely upon alleged communications in 2010 and 2011 which informed Plaintiffs of a continuing right to foreclose and which purportedly did not guarantee loan assistance.   However, Defendants admit Plaintiffs did not attach these alleged communications to the Complaint, nor did Defendants attach them to their Motion to Dismiss. Even if they had, the Court will not consider the evidence where it is challenged by Plaintiffs and they have yet to conduct discovery or present evidence supporting their claim. *See Ranson*, 2013 WL 1077093, at *8 ("when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity" (internal quotation marks and citation omitted)).   Likewise, as stated in *Ranson*, "the Court finds no merit to the argument that Plaintiff[s'] admission that . . . [they were] two months behind on . . . [their] loan extinguishes . . . [their] estoppel claim.   It is clear from the Complaint that Plaintiff[s'] claim is that . . . [they] relied upon the alleged misrepresentations after . . . [they were] two months

delinquent." *Id.* at 17.   Therefore, for these reasons, the Court **DENIES** Defendants' motion to dismiss the estoppel claim in Count VI.

## H.
## WVCCPA

Defendants next argue that Plaintiffs' claims under the WVCCPA in Counts VII and X must be dismissed because they have failed to allege sufficient facts to support their claims. With respect to their alleged claim in Count X under West Virginia Code § 46A-2-128(e),[7] for contacting Plaintiffs after receiving a certified letter with notice that they were represented by counsel, Defendants admit Plaintiffs have alleged some facts.   Nevertheless, Defendants argue that the claim should be dismissed because the Complaint does not identify the name and address of counsel.   The Court soundly rejects this argument.   It is not a requirement that the Complaint

---

[7]West Virginia Code § 46A-2-128(e) provides:

> No debt collector shall use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> *          *          *
>
> (e) Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication.

W. Va. Code § 46A-2-128(e).

-24-

set forth each and every fact known to Plaintiffs. *See* Fed. R. Civ. P. 8(a)(2) (providing that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief").   Clearly, Plaintiffs have stated a plausible claim for relief on this basis.   Moreover, if Defendants do not know the name of the attorney identified as counsel in the certified letter, that issue can easily be resolved in discovery.

The Court also rejects Defendants' arguments to dismiss Plaintiffs' claims in Count VII that "Defendants used fraudulent, deceptive, or misleading representations or means to collect or attempt to collect claims or to obtain information concerning Plaintiffs, in violation of W. Va. Code § 46A-2-127[,]"[8] that they "used unfair and unconscionable means in an effort to collect a debt, in violation of W. Va. Code § 46A-2-128[,]" and that they "refused to apply Plaintiffs' payments to their account, in violation of West Virginia Code § 46A-2-115."[9] *Compl.* at ¶¶68-70.

---

[8]West Virginia Code § 46A-2-127 provides, in part:   "No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers."

[9]West Virginia Code § 46A-2-115(c) provides:

> (c) All amounts paid to a creditor arising out of any consumer credit sale or consumer loan shall be credited upon receipt against payments due: Provided, That amounts received and applied during a cure period will not result in a duty to provide a new notice of right to cure; and provided further that partial amounts received during the reinstatement period set forth in subsection (b) of this section do not create an automatic duty to reinstate and may be returned by the creditor. Default charges shall be accounted for separately; those set forth in

-25-

Plaintiffs support these claims by alleging that (1) Defendant BOA told them not to make any additional payments and, if they attempted to do so, the payments would be returned; (2) Defendant BOA told them they qualified for a loan modification, but later denied assistance; (3) Defendant BOA repeatedly said it would not foreclose and then said it was seeking foreclosure; and (4) Plaintiffs repeatedly submitted documentation and income information for a modification at Defendant BOA's request.

Similar to *Ranson*, these allegations encompass collecting financial information about Plaintiffs through the modification process.  In addition, the alleged refusal to accept payments greatly increased the arrearage on the loan to a point that Plaintiffs assert they could not make a lump sum payment to retain their house, resulting in bankruptcy.  As explained by the Honorable Thomas E. Johnston in *Koontz*, West Virginia Code "§ 46A-2-127 applies to both 'misrepresentations made in collecting a debt' and 'misrepresentations . . . [made] when obtaining information on a customer.'" 2011 WL 1297519, at *6 (citation omitted).  "Therefore, allegations that a financial institution misrepresented to the borrower that it would reconsider a loan modification and, thereby, obtained additional financial information from the borrower, are sufficient to state a claim." *Ranson*, 2013 WL 1077093, at *9 (citing *Koontz*, 2011 WL 1297519, at *6).  Additionally, this Court stated in *Ranson* that allegations like these "are sufficient to state a claim that Defendant used 'unfair or unconscionable means to collect or attempt to collect any

_____

subsection (b) arising during such a reinstatement period may be added to principal.

W. Va. Code § 46A-2-115(c).

-26-

claim' pursuant to West Virginia Code § 46A-2-128, in part." *Id* (citing *cf. Wilson v. Draper v. Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) (stating "Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt" under the Fair Debt Collection Practices Act (citations, internal quotation marks, and footnote omitted)).   Moreover, the Court finds Plaintiffs' allegations that Defendant instructed them not to make payments and, if they did, their payments would be returned, is sufficient to state a plausible claim under West Virginia Code § 46A-2-115.[10]   Thus, upon consideration of the allegations made here, the Court finds they are sufficient to state a claim under these sections.

## I.
## Failure to Provide
## Statement of Account

Defendants further argue Plaintiffs' claim in Count VIII that "Defendants failed and refused to provide an account history to the Plaintiff[s] in violation of West Virginia Code § 46A-2-114(2)"[11] lacks factual support.   Defendants assert Plaintiffs only make this one

---

[10]The Court notes that Defendants have not made any specific argument as to why Plaintiffs' claim under West Virginia Code § 46A-2-115 for refusing to apply payments should be dismissed other than their general claim that all Plaintiffs' claims under the WVCCPA lack support.

[11]This section states:

> (2) Upon written request of a consumer, the person to whom an obligation is owed pursuant to a consumer credit sale, consumer lease or consumer loan, other than one pursuant to a revolving charge account or revolving loan account, shall provide a written statement of the dates and amounts of payments made within the past twelve months and the total amount unpaid. The requested statement shall be provided without charge once during each year of the

conclusory statement and, therefore, the claim must be dismissed.   The Court finds no merit to this argument.   Plaintiffs very clearly allege in the Complaint that, "[o]n April 5, 2012, by certified mail, Plaintiffs requested that Defendant BOA provide them with a full account record . . . .   Defendant received this letter on April 10, 2012, as indicated by certified mail return receipt. Nonetheless, Defendant failed and refused to provide the requested information." *Compl.* at ¶28(a) – (c).

Defendants further assert, however, that "[i]n order to state a claim under W. Va. Code § 46A-2-114(2), Plaintiff must allege that an account history, of a certain type of loan, was not provided against the account upon request." *Defs.' Mem. in Support of Mot. to Dis.*, at 18 (ECF No. 8).   Defendants claim that Plaintiffs have failed to allege "the type of charge account or whether a previous request was made during the previous twelve (12) months." *Id*.   Again, the Court finds this argument without merit.   In fact, the Court finds it is incomprehensible how Defendants can even argue that Plaintiffs have failed to allege the type of loan at issue.   It is abundantly clear that this entire case involves their mortgage.   There is no other loan even mentioned or discussed in the thirteen-page Complaint.   Moreover, the fact Plaintiffs did not say whether or not they made more than one request for an account history within the previous twelve months is completely irrelevant and unnecessary to state a claim.   West Virginia Code

---

term of the sale, lease or loan. If additional statements are requested the creditor may charge not in excess of three dollars for each additional statement.

W. Va. Code § 46A-2-114(2).

§ 46A-2-114(2) merely provides that a consumer can receive one statement a year for free, and a creditor can charge up to three dollars for each additional statement.   Therefore, for these reasons, the Court **DENIES** Defendants' request to dismiss Count VIII.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss Counts I, II, III, IV, VI, VII, VIII, and X, and Count V as to Defendant BOA, and Count IX as to Defendant Mellon.   However, the Court **GRANTS** Defendants' motion with respect to Count V as to Defendant Mellon and Count IX as to Defendant BOA.


The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to all counsel of record and any unrepresented parties.


ENTER:       May 1, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE